IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **LAREINE UDELL STEINFELD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-CV-05838 |
| | ) | |
| **JONES LANG LASALLE AMERICAS, INC**. | ) | Hon. Martha M. Pacold |
| | ) | Hon. Magistrate Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR EVIDENTIARY SANCTIONS

Dated: June 14, 2023

Respectfully submitted,

**JONES LANG LASALLE AMERICAS, INC.**

By: /s/ *Tiffany S. Fordyce*
Tiffany S. Fordyce (Attorney No. 235063)
fordycet@gtlaw.com
Laura Luisi (Attorney No. 6321034)
luisil@gtlaw.com
Kara E. Angeletti (Attorney No. 6329388)
angelettik@gtlaw.com
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400

Elizabeth Moum (admitted *pro hac*)
moume@gtlaw.com
Greenberg Traurig, LLP
777 S. Flagler Dr., Ste. 300
West Palm Beach, FL 33401

*Attorneys for Jones Lang LaSalle Americas, Inc.*

Defendant, Jones Lang LaSalle Americas, Inc. ("JLL"), pursuant to Federal Rule of Civil Procedure ("Rule") 37, requests that this Court sanction Plaintiff Lareine Udell Steinfeld ("Steinfeld") based on a continued pattern of discovery violations and misconduct. In support of its request, JLL states as follows:

## I. INTRODUCTION

Despite previously being sanctioned for her failure to comply with discovery rules, Dkt. 127, 162, Steinfeld has continued her pattern of discovery misconduct. Following nearly two years of delayed productions, incomplete and evasive discovery responses, and several court orders which should have encouraged her compliance with the discovery rules, Steinfeld confirmed in her third (court-ordered) deposition that responsive documents still have not been produced to JLL—and some may have been spoliated. These documents include records substantiating alleged mitigation efforts Steinfeld disclosed for the first time in her third deposition and a complete copy of notes she prepared that may prove one of JLL's counterclaims. Because Steinfeld disobeyed a court order, failed to submit complete discovery responses, and failed to preserve electronically-stored information, Steinfeld's mitigation evidence should be limited, and she should be held in default with respect to JLL's breach of contract counterclaim.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Steinfeld worked for JLL from November 1, 2011 to December 3, 2019. Starting in approximately late June 2019, Steinfeld made various complaints, all of which were investigated by JLL. Throughout this process, JLL continued to employ Steinfeld while counseling her in an effort to help improve her performance as a commercial real estate salesperson, which was lacking. By November 2019, Steinfeld was not working on any real estate deals and had no prospective

1

business. Thus, on December 3, 2019, JLL terminated Steinfeld's employment for lack of performance. In response, Steinfeld filed this action, alleging retaliation in violation of the Sarbanes-Oxley Act ("SOX") and the Taxpayer First Act ("TFA"), unpaid wages, and breach of contract. *See generally* Dkt. 1; Dkt. 104. JLL asserted counterclaims for defamation and breach of fiduciary duty, as well as a breach of contract claim on several bases—including, in pertinent part, Steinfeld's failure to return company property to JLL upon her termination. Dkt. 104 ¶¶ 72-91, 95-96, 104-107.[1]

### B. Steinfeld's Discovery Misconduct Resulted in Delays, Prejudice to JLL, and the Need for Court Relief.

The record establishes that Steinfeld has engaged in a pattern of dilatory and evasive discovery tactics, forcing JLL to file two prior motions to compel in attempts to obtain her compliance with basic discovery obligations.

#### 1. Steinfeld's Discovery Misconduct Resulted in this Court Granting JLL's Motions to Compel and Issuing Sanctions Against Steinfeld and her Counsel.

Throughout this litigation, Steinfeld has shirked her discovery obligations.[2] For example, after Steinfeld served her responses to JLL's only set of written discovery over one month past the deadline and made an incomplete document production over two and a half months after the deadline, JLL engaged in months-long efforts attempting to resolve Steinfeld's deficiencies and evasive responses.[3] *See* Dkt. 79 at 2-4, Ex. 2-3. This Court ordered Steinfeld to "complete her production of documents and serve a privilege log by 8/27/21." Dkt. 60 (the "August Order").

---

[1] For a more detailed description of the facts, JLL incorporates its prior Motion to Compel and its Second Amended Counterclaims. *See* Dkt. 79; Dkt. 104.
[2] For a more fulsome explanation of Steinfeld's prior discovery misconduct, see JLL's prior Motion to Compel briefing, which JLL fully incorporates herein. *See* Dkt. 79, 89, 97, 105.
[3] Three of several examples include: Steinfeld declining to identify her job duties, Dkt. 79 at Ex. 2 p. 3; refusing to identify communications to which she was a party, *id.* at Ex. 2 p. 3-4; and declining to disclose the basis for her belief that JLL violated tax, securities or other laws, *id.* at Ex. 2 p. 4-5.

Steinfeld did not do so. *See* Dkt. 79 at 3-4. In fact, during her second deposition on October 12, 2021, which took place a month and a half **after** the court-ordered production deadline, Steinfeld confirmed that she still had not produced documents central to both parties' claims and defenses. *Id.* at 5.

Steinfeld's discovery violations continued. On February 3, 2022, three days after the close of fact discovery, Steinfeld served amended interrogatory responses containing nine pages of new information and documents that should have been produced well before her deposition, which had taken place four months earlier, and that contradicted her deposition in some respects. *Id.* at 5-9. By this time, Steinfeld also had not completed her document production or privilege log per the August Order.[4]

As a result of Steinfeld's repeated misconduct, JLL was forced to file a motion to compel. In response, the Magistrate ordered Steinfeld to provide a complete privilege log; appear for a third deposition, the costs for which she and her counsel were required to pay; and produce engagement letters with her prior counsel. Dkt. 127. The Magistrate also ordered Steinfeld and her counsel to pay JLL's costs and fees associated with the motion. *Id.*

### 2. Steinfeld Again Failed to Abide by the Magistrate's Orders.

Steinfeld's discovery violations were not limited to fact discovery. On March 11, 2022, Steinfeld served two expert reports, both of which failed to adequately identify the documents considered by the experts as required by Rule 26(a)(2)(B)(ii). *See* Dkt. 97 at 1-5. Moreover, Steinfeld used one expert report to shoehorn new documents into her production that, despite

---

[4] JLL discovered Steinfeld had withheld even more responsive documents when it received a third-party production from the Occupational Safety and Health Administration related to the pre-litigation complaint Steinfeld had filed. *See* Ex. 1, Pl.'s Am. Resps. to Reqs. to Prod. at 12-13, 18, 20-21, 26. This amounts to yet another violation of the August Order. JLL chose not to bring this issue before the Court in earlier motions but asserts that this information is relevant to the Court's analysis of whether her repeated discovery violations support the need for evidentiary sanctions now.

having been requested since March 2021 and ordered to be produced by August 2021, had never been produced during fact discovery. *Id.* After repeatedly attempting to resolve these issues, JLL filed its second motion to compel. The Magistrate granted the motion, ordering Steinfeld to produce "expert opinions that comply with Federal Rule 26(a)(2)(b)" by October 7, 2022. Dkt. 128.

Steinfeld failed to resolve the deficiencies related to one expert by that deadline and only did so, over one month later, after JLL raised the issue with her counsel. *See* Ex. 2, Oct. 27, 2022 Letter; Ex. 3, Nov. 15, 2022 Email. With respect to her second expert, Steinfeld appeared to comply with the court-ordered deadline by providing what she represented to be a complete list of the documents on which that expert relied. However, when JLL took this expert's deposition, JLL discovered additional documents he considered that were neither listed in his report nor produced to JLL. Ex. 4, Feb. 2022 Emails. JLL finally received these records, nearly one year after the expert issued his report and three weeks after his deposition. Ex. 4, Feb. 2022 Emails.

### C. Steinfeld's Third Deposition Revealed Continued Discovery Violations.

During Steinfeld's court-ordered third deposition, JLL learned of still more misconduct.[5] Her testimony also made clear that she had engaged in questionable document retention practices. Specifically, Steinfeld's third deposition revealed her failure to produce the following:

- **Documents Steinfeld Claims to Rely on to Support her Allegations.** Steinfeld claimed she reviewed several documents to support her belief that JLL violated tax and securities laws. Ex. 5, N. Steinfeld Third Dep., 435:19-439:6, 495:1-499:17, 526:16-528:15. While Steinfeld did produce certain of these documents, other additional documents she referenced in her deposition were never produced or previously identified, despite being responsive to document requests and interrogatories served in

---

[5] In addition to the production issues apparent from her testimony, Steinfeld's transcript is also rife with contradictory statements and evasive responses. *See, e.g.*, Ex. 5, Steinfeld Third Dep., at 415:24-423:13 (attempting to avoid question about whether she returned confidential material to JLL after her termination); 506:12-509:4 (refusing to respond to question of how she defined certain terms in her interrogatory responses); 520:6-522:11 (providing evasive response to question posed).

> March 2021 and relating to a material element of Steinfeld's SOX and TFA claims. *See* Dkt. 79 at Ex. 2-3.

- **Steinfeld "Notes" and Potential Spoliation of Same.** Steinfeld's expert disclosures included a summary of Steinfeld's complaints (the "Steinfeld Notes" or "Notes"). *See* Ex. 5, Steinfeld Third Dep., Ex. 30. Steinfeld testified that this document "could be an aggregation of notes that [she] would have prepared previously" or "notes that [she] had in [her] computer that were never given to anyone," indicating that Steinfeld had responsive personal notes that she intentionally withheld. *See id.* at 547:12-24, 550:25-551:8. Although plainly given to her expert, the Notes were not produced during fact discovery or included on a privilege log. The Notes are incomplete, referring to "attached correspondence" and "screenshots from JLL's accounting system," without including the referenced documents. *See id.*; *see also* Ex. 5, Steinfeld Third Dep., at 546:20-549:12. Steinfeld stated the complete version no longer exists. Ex. 6, Dec. 3, 2022 E-mail from Steinfeld's Counsel; Ex. 7, Jan. 27, 2023 Letter. Neither Steinfeld nor her counsel can identify the Notes' origin or the documents/screenshots that were originally attached. *See* Ex. 5, Steinfeld Third Dep., at 550:5-553:17. Without any basis (and seemingly without Steinfeld's counsel having seen the complete version), they claim the Notes are privileged. *See id.*; *see also* Ex. 7, Jan. 27, 2023 Letter. To date, they have not included in the Notes on the privilege log that was ordered to be completed first in August 2021 and again in October 2022.

- **Mitigation Documents and Spoliation of Same.** Steinfeld continues to withhold documents reflecting her supposed job search efforts. At her third deposition, Steinfeld claims to have applied to "a lot of positions," but was unable to identify a single real estate company to which she had applied. *See* Ex. 5, Steinfeld Third Dep. at 578:5-582:21. Even though she would have received application confirmations via email, she had not given these documents to her attorney.[6] *Id.* at 581:8-22. Moreover, despite her obligation to retain responsive information, Steinfeld "regularly" "cleans out" her emails since she filed this lawsuit and has not disabled any filters that automatically delete emails. *Id.* at 583:17-585:14. To date, Steinfeld has not produced the mitigation documents referenced during her third deposition.

Steinfeld's third deposition testimony renewed JLL's concerns that Steinfeld has been both dilatory in complying with her production obligations and dismissive of her document retention obligations.

### D. JLL's Meet-and-Confer Efforts Did Not Resolve the Outstanding Issues.

After Steinfeld's third deposition, her counsel contacted JLL to address the discovery issues that surfaced during the deposition. *See* Ex. 6, Dec. 3, 2022 Email. His email did not address

---

[6] This is not the first time JLL has experienced issues with Steinfeld producing mitigation documents. *See* Dkt. 79 at 4-5, 7.

5

potential spoliation or documents relating to mitigation. *See id.* On December 17, 2022, JLL contacted Steinfeld's counsel about these outstanding issues, requesting a call. *See* Ex. 8, Dec. 17, 2022 Letter. Steinfeld's counsel did not respond. JLL followed up via phone on January 6, 2023. *See* Ex. 9, Jan. Email. During this call, Steinfeld's counsel stated that, if they were to respond in writing to JLL's letter, they would do so by January 20, 2023. *See id.* Steinfeld's counsel finally responded on January 27, 2023. *See* Ex. 9, Jan. Email; Ex. 7, Jan. 27, 2023 Letter.

In her response, Steinfeld did not cure or otherwise satisfactorily explain any of the outstanding issues. Instead, she continued to assert privilege without providing a basis for such privilege or amending her privilege log to account for the Steinfeld Notes, and she asserted that JLL is not entitled to documents pertaining to her purported mitigation efforts. She wholly failed to address the spoliation issue. *See* Ex. 7, Jan. 27, 2023 Letter. Accordingly, based on Steinfeld's history of discovery misconduct and repeated delay, which continues to this day in the face of multiple court orders, as well as the discrepancies suggesting that relevant documents still have not been produced and/or have been spoliated, JLL has no choice but to seek evidentiary sanctions to cure this unending pattern and the prejudice it faces.

### III. ARGUMENT

#### A. Legal Standard

Rule 37 identifies discovery misconduct warranting sanctions, including in pertinent part: (1) failure to comply with a court order, Fed. R. Civ. P. 37(b); (2) failure to disclose or supplement an earlier response, *id.* at R. 37(c); and (3) failure to preserve electronically-stored information. *Id.* at R. 37(e). Rule 37 sanctions are generally appropriate where the offending party has evinced a pattern of dilatory and evasive discovery conduct. *See, e.g.*, *Govas v. Chalmers*, 965 F.2d 298, 303 (7th Cir. 1992) (citations omitted). District courts have broad discretion to impose sanctions. *See*

6

*National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642 (1976) (Rule 37 "provide[s] a district court with valuable tools for preventing the parties . . . from 'unjustifiably resisting discovery.'"); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984) (citation omitted); *see also Autexpo, S.p.A. v. Midas Int'l Corp.*, No. 81-C-5818, 1988 U.S. Dist. LEXIS 6009, at *17 (N.D. Ill. Jul. 13, 1988) (finding sanctions are "designed to punish the conduct of wrongdoers who harm complying litigants . . . , to induce the cooperation . . . of litigants and lawyers, and to deter those who would otherwise be tempted to ignore court orders").

Sanctions for violations of Rule 37(b) and (c) can include: (i) "directing that . . . other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from . . . introducing designated matters in evidence; [and] . . . (vi) rendering a default judgment against the disobedient party[.]" Fed. R. Civ. P. 37(b)(2)(i-ii, vi); *id.* at 37(c)(1)(C). Where a party violates Rule 37(e), the court may, upon a showing of intent to deprive by the withholding party, "presume that the lost information was unfavorable to the party; [] instruct the jury that it may or must presume the information was unfavorable to the party; or . . . enter a default judgment." *Id.* at R. 37(e)(1-2).

To determine whether (and which) sanctions are appropriate, courts "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight*, 658 F.3d 637, 643 (7th Cir. 2011). Thus, courts review sanctions "not in isolation, but in light of the entire procedural history of the case." *Id.*

**B. Steinfeld's Discovery Misconduct Warrants Limiting her Mitigation Evidence.**

An employee pursuing a retaliatory discharge claim, like Steinfeld, is required to mitigate her damages. *Sharkey v. J.P. Morgan Chase & Co.*, No. 10-cv-3824 (DLC), 2018 U.S. Dist. LEXIS 35538, *27 (Mar. 5, 2018). If an employer can establish the employee's failure to mitigate—*i.e.*, failure to attempt to find comparable work—the employee's damages may be

7

limited. *Id.* at *27-28. Thus, evidence related to an employee's job search efforts is central to an employer's defense. Although Steinfeld testified at her third deposition that she applied to many jobs and received emails reflecting those applications, she has not produced any supporting documentation. Steinfeld's failure violates Rules 37(b), (c) and (e).

First, Steinfeld violated Rule 37(b) when she failed to comply with the Magistrate's August Order that she complete her production by August 27, 2021. *See* Dkt. 60. Any mitigation evidence should have been produced by that deadline, and certainly should not **still** remain outstanding. This alone is a sufficient basis to prevent Steinfeld from entering evidence on delayed mitigation efforts disclosed after fact discovery closed. *See Autexpo*, 1988 U.S. Dist. LEXIS 6009, at *12-13 (finding plaintiff's repeated failures to produce documents, despite agreement to do so, violated court orders and was a "sequence of events . . . suggest[ing] a willful pattern of disregard for the court's orders and rules, and call[ing] for the sanction of dismissal").[7]

Second, even if Steinfeld's late-disclosed mitigation efforts occurred after her August 2021 production deadline, she violated Rule 37(c) by failing to supplement her discovery responses to disclose those efforts. *See* Fed. R. Civ. P. 37(c). Steinfeld's mitigation efforts are critical to assessing her damages. *See Sharkey*, 2018 U.S. Dist. LEXIS 35538 at *27. Her initial failure to produce these mitigation documents during the fact discovery period, and now outright refusal to do so after her court-ordered third deposition, is a clear violation of her duty to supplement. *See Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125 (7th Cir. 2002) (affirming sanction where moving party sought information earlier in case and offending party provided late disclosure, impacting moving party's ability to explore information). Steinfeld asserts JLL is not entitled to

---

[7] Courts recognize that "the burden of moving the case to trial rests on plaintiff," and failing to take action to comply with a court order before the deadline "indicates bad faith and fault." *Autexpo*, 1988 U.S. Dist. LEXIS 6009 at *13.

8

documents supporting her mitigation testimony because fact discovery has closed. This position is unavailing. Steinfeld was required by Rule 37(c) to supplement her production with these documents to comply with her discovery obligations. Because she did not do so, JLL had no reason to know the documents even existed until Steinfeld's third deposition.

Third, Steinfeld's third deposition testimony also confirms that sanctions under Rule 37(e) are appropriate. Steinfeld acknowledged that she received email confirmations of her job applications with potential employers (none of which were produced), but also admitted to "regularly" "cleaning out" her emails since this lawsuit began. Ex. 5, Steinfeld Third Dep., at 583:17-585:14. This testimony—along with her prior evasive responses about her mitigation efforts, her refusal to identify a single real estate company to which she applied, and her counsel's curious, post-deposition representations that she "did not withhold anything related to these topics" despite her testimony to the contrary, *see id.* at 578:13-581:7; Ex. 7, Jan. 27, 2023 Letter at 2—lead to the conclusion that these records either never existed or were spoliated. *See Donelson v. Hardy*, 931 F.3d 565, 566-70 (7th Cir. 2019) (affirming dismissal sanction for deceptive and evasive deposition responses where lesser sanctions were ineffective); *see also Autexpo*, 1988 U.S. Dist. LEXIS 6009 at *12-14 (noting party's claim that certain records were not retained could be blamed on party's protracted delay in attempting to obtain records); *e360 Insight*, 658 F.3d at 642-43 (striking 16 witnesses and limiting damages request as sanction for plaintiff's pattern of evasive responses and late disclosed information despite two orders compelling production).

Steinfeld's failure to produce mitigation evidence—compounded by her belated and vague mitigation testimony,[8] prior evasive discovery responses, dilatory productions, and questionable

---

[8] Steinfeld's mitigation testimony in her prior deposition confirmed she did not engage in consistent job search efforts. *See* Ex. 10, Steinfeld First Dep. at 128:15-130:15 (citing two potential opportunities in nearly two years since termination). Her vague and evasive testimony at her third deposition appears to be nothing more than a thinly veiled attempt to address her failure to mitigate at the eleventh hour.

document retention efforts (or lack thereof)—more than justifies sanctions. Accordingly, JLL requests this Court limit Steinfeld's mitigation evidence to the efforts identified in her October 2021 depositions. Such relief aligns with Rules 37(b) and (c) by allowing facts to be established, as well as 37(e), which allows a measure necessary to cure the prejudice to JLL of having to further expend resources to verify Steinfeld's testimony and establish its affirmative defense.[9]

### C. Default Judgment for JLL on Its Breach of Contract Counterclaim Is Warranted.

Steinfeld's discovery misconduct regarding the inexplicably incomplete Steinfeld Notes also violates Rules 37(b), (c) and (e) and warrants a more severe sanction: default judgment on JLL's breach of contract claim based on Steinfeld's failure to return documents to JLL upon her termination. A default judgment sanction is most appropriate where, as here, less drastic sanctions have proven unavailing, and discovery misconduct has continued to occur after the imposition of lesser sanctions. *See Autexpo*, 1988 U.S. Dist. LEXIS 6009 at *10-11 (citations omitted). To establish default judgment as an appropriate sanction, the moving party must show the offending party's willfulness, bad faith, or fault, *e360 Insight*, 658 F.3d at 642, which may be inferred from a party's repeated failures to comply with discovery obligations. *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001).

#### 1. Withholding the Steinfeld Notes Amounts to Willful Discovery Misconduct.

Neither Steinfeld nor her counsel can confirm the origin of the Steinfeld Notes. Regardless of when they were created, Steinfeld failed to incorporate them into her discovery disclosures or production. The Notes qualify as a document that, if in existence by the August 2021 production deadline, should have either been produced or, if appropriate, included on a privilege log consistent with the August Order. *See* Ex. 8, Dec. 17, 2022 Letter (citing 18 document requests to which the

---

[9] As discussed *infra*, lesser sanctions will not deter Steinfeld's pattern of misconduct.

10

Notes were responsive). It is possible that the Notes existed at the time of the August Order. As evidenced by Steinfeld's privilege log, she was plainly contemplating taking legal action against JLL at least as early as August 2019, before JLL had even completed its investigation into Steinfeld's complaints. Steinfeld's decision to withhold the Steinfeld Notes—and her admission that she might have prepared them and would "never" have "given [them] to anyone," Ex. 5, Steinfeld Third Dep. at 550:25-551:8—is **another** direct violation of the August Order, warranting sanctions under Rule 37(b). See Dkt. 79 at 3-5; see In re Golant, 239 F.3d at 936-37 (affirming dismissal sanction where party partially complied with order, claiming "it is unknown where the rest of [the records] are," and where court found party failed to comply because "if he were to comply he would, in effect, sink himself").

If the Steinfeld Notes did not exist by the August 2021 deadline, Steinfeld instead had an obligation to supplement her production or privilege log when she created them. But again, in violation of Rule 37(c), she did not. Instead, Steinfeld skirted her discovery obligations and shoehorned in this new document through her expert disclosures after fact discovery had closed (and perhaps at a time when she believed it most benefited her). See generally Dkt. 97.

The Steinfeld Notes also raise issues under Rule 37(e). The Notes are plainly incomplete, with missing attachments and screenshots, as Steinfeld admitted in her deposition. See generally Ex. 5, Steinfeld Third Dep. at Ex. 30; see also id. at 549:11-23 (admitting document was missing information and that she would not censor herself). Notably, Steinfeld admits that some of the missing screenshots are from JLL's confidential internal accounting systems. See id. at 549:15-23. Per Steinfeld's employment agreement, upon which JLL's breach of contract counterclaim is based, Steinfeld was required to return all JLL confidential information and documents, including in electronic form, to JLL upon her termination. Dkt. 104 at ¶¶ 6-7, 9-10, 13, 16, 63; Dkt. 104-1 at

11

4 (defining "Confidential Information" in part as financial, costs, compensation information). Therefore, a complete version of the Notes—that, based on Steinfeld's testimony, would include documents and information Steinfeld was not permitted to retain after her termination—would prove JLL's breach of contract counterclaim. However, it appears that Steinfeld spoliated the original, complete version. Ex. 7, Jan. 27, 2023 Letter (noting more complete document "does not exist"). Steinfeld's spoliation of responsive, possibly outcome-determinative documents cannot go without penalty.

**2. Steinfeld's Belated Privilege Claim Does Not Cure Her Transgression.**

Steinfeld attempts to explain away her spoliation of a relevant, potentially dispositive document by asserting that JLL is not entitled to the complete document either because JLL has the only version of the document that was provided to her expert or because the missing information is privileged. *See* Ex. 7, Jan. 27, 2023 Letter. Both arguments are misguided and unsupported.

Steinfeld's position that JLL has not been prejudiced because JLL now has the same incomplete version of the document as Steinfeld's expert ignores the fact that JLL expressly requested this document as early as March 2021 in its document requests. Steinfeld's position also flies in the face of JLL's months-long battles to obtain a full production from Steinfeld and the Magistrate's orders compelling Steinfeld to complete her production. Ultimately, Steinfeld continued her pattern of misconduct by withholding a critical, responsive document for nearly two years and only chose to produce it when it supposedly benefited her case—and even then, only in an incomplete format that prejudices JLL's breach of contract counterclaim.

Second, despite having over six months to do so, neither Steinfeld nor her counsel has provided any facts to support that this document, or anything appended thereto, is privileged.[10] *See* Ex. 5, Steinfeld Third Dep. at 546:20-24, 547:21-24, 548:4-8, 551:3-8 (unable to identify origin of notes); *see also* Ex. 7, Jan. 27, 2023 Letter at 1-2 (failing to identify basis for asserted privilege). Not only do Steinfeld and her counsel seem to lack knowledge about this document sufficient to claim privilege, but the law also does not support such a claim. The attorney-client privilege and work-product doctrines protect only communications between client and counsel and counsel's mental impressions; they do **not** protect against the "disclosure of underlying facts," and no privilege can justify Steinfeld's refusal to produce to JLL its own documents. *Poshard*, 2020 U.S. Dist. LEXIS 157997 at *8-9 (citing *Upjohn v. United States*, 449 U.S. 383, 395 (1981)). The context of the Steinfeld Notes confirms that the missing information is just that: underlying facts.[11] But even if the missing information were somehow privileged, Steinfeld has failed to include the Notes on her privilege log, amounting to **yet another violation** of the Magistrate's orders requiring Steinfeld to produce a complete privilege log in August 2021 and again September 2022. *See* Dkt. 60, 127.

Steinfeld has taken an indefensible position. Either she failed to retain the complete version, amounting to spoliation in violation of Rule 37; or the complete version is privileged (without any supporting facts to justify this claim) and she intentionally omitted it from a privilege

---

[10] Steinfeld has the burden to establish privilege. *E.g.*, *Poshard v. Madison Cty.*, No. 3:19-CV-00324-SMY-GCS, 2020 U.S. Dist. LEXIS 157997, *4 (S.D. Ill. Aug. 31, 2020). Curiously, her counsel claims the complete version does not exist but also, apparently without having reviewed the complete version, stands by a privilege objection to justify withholding the missing information. *See* Ex. 7, Jan. 27, 2023 Letter.

[11] The missing information appears to include at least one communication with a former JLL employee, implying waiver of any privilege over that communication due to the presence of a third party. The missing information also includes screenshots of JLL's internal accounting systems that Steinfeld claims support her allegations, which would contain only facts from that system and certainly would not include attorney-client privileged/work-product information, as the underlying information has always belonged to JLL. *See* Ex. 5, Steinfeld Third Dep. at Ex. 30.

log that has already been the subject of one motion to compel and that she was ordered to complete over seven months ago. Either way, she has violated her discovery obligations. *See e360 Insight*, 658 F.3d at 643 (holding that, with party's history of discovery misconduct, "[a] district court may conclude that one more supposed miscommunication is just another example of a party's demonstrated inability to take his discovery obligations seriously" and finding district court acted with "more restraint than necessary" by imposing lesser sanction than dismissal) (citations omitted). Such flagrant disregard for the rules cannot be condoned. Default judgment on JLL's breach of contract counterclaim is appropriate.

### 3. Steinfeld's Misconduct Demonstrates Fault, and Lesser Sanctions Will Not Deter Further Misconduct.

Based on Steinfeld's long-demonstrated history of discovery misconduct, including spoliating a potentially dispositive document, this Court can infer the willfulness, bad faith, or fault necessary to justify default judgment on JLL's breach of contract counterclaim. *See, e.g.*, *Autexpo*, 1988 U.S. Dist. LEXIS 6009 at *14 (dismissing case by inferring bad faith and fault where party's pattern of misconduct resulted in documents being unavailable). Seventh Circuit "case law makes it clear that a district court has the discretion to [default a party] when [that] party demonstrates a pattern of dilatory and evasive discovery tactics and when that party willfully persists in such tactics in violation of court warnings and orders." *Govas*, 965 F.2d at 301 (finding impactful that documents plaintiffs failed to produce contradicted their damages claims and other allegations).[12]

Steinfeld has already been sanctioned by this Court by being ordered to sit for another deposition, pay the costs of that deposition, and pay JLL's fees and costs in filing its motion to

---

[12] While *Govas* pertained to dismissal, courts often assess sanctions to dismiss and sanctions to enter default judgment similarly. *See Vera Bradley Designs, Inc. v. Aixin Li*, No. 20-C-2550, 2021 U.S. Dist. LEXIS 86068, at *2-3 (N.D. Ill. May 5, 2021).

14

compel. Despite this, Steinfeld has ignored the Court's prior admonitions and either continues to withhold, or has destroyed, a document that is responsive to 18 of JLL's document requests and directly relates to JLL's breach of contract counterclaim—all without a valid claim of privilege or any attempt to include the Notes on her privilege log, which the Court ordered her to complete in October 2022. This issue comes on the heels of months of meet-and-confers, two motions to compel resolved in JLL's favor, and continued defiance of the Court's orders.

In light of her extensive pattern of dilatory and evasive discovery tactics, which have persisted even following the close of fact discovery and being subjected to lesser sanctions, Steinfeld and her counsel will not be deterred from future misconduct by less severe sanctions. Nor would a fourth deposition resolve the issue.[13] Default judgment on only one of JLL's counterclaims is a measured and appropriate sanction when considering Steinfeld's compounding discovery transgressions over two years. The loss of relevant and potentially outcome-determinative documents, combined with "the length of time over which this case has progressed[,] militates against imposing warning sanctions rather than dismissal." *See Autexpo,* 1988 U.S. Dist. LEXIS 6009 at *15 (citing cases noting that although lesser sanctions may be appropriate for newly filed cases, dismissal is proper for older cases).

## CONCLUSION

For these reasons, JLL respectfully requests that this Court limit Steinfeld's mitigation evidence to the efforts identified in her first two depositions, enter default judgment against Steinfeld on JLL's breach of contract counterclaim for return of property, and award any other relief this Court deems equitable and just.

---

[13] *See supra*, at Procedural and Factual Background, and n. 7 (noting history of evasive responses from Steinfeld); *see also Donelson*, 931 F.3d at 566-70 (affirming dismissal for deposition misconduct due to ineffective lesser sanctions).

15

**CERTIFICATE OF SERVICE**

I, Kara Angeletti, certify that on June 14, 2023, a true and correct copy of **Defendant's Motion for Evidentiary Sanctions** was served electronically on the following counsel through the Court's ECF system:

Amir F. Tahmassebi
Konicek & Dillon, P.C.
21 W. State St.
Geneva, IL 60134
amir@konicekdillonlaw.com

Gregory P. Brown
Kevin Paule
Sean Mullen
Hill Ward Henderson, P.A.
101 E. Kennedy Blvd., Ste. 3700
Tampa, FL 33602
Gregory.brown@hwhlaw.com
Kevin.paule@hwhlaw.com
Sean.mullen@hwhlaw.com

/s/ *Kara E. Angeletti*
One of Defendant's Attorneys