IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAREINE UDELL STEINFELD, ) | |
| ) | |
| Plaintiff, ) | No. 20 CV 5838 |
| ) | |
| v. ) | Judge Jeffrey I. Cummings |
| ) | |
| JONES LANG LASALLE AMERICAS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lareine Steinfeld ("Steinfeld") brings this action against her former employer defendant Jones Lang Lasalle Americas, Inc. ("JLL"), alleging *inter alia*, whistleblower retaliation in violation of the Sarbanes-Oxley Act. Currently before the Court is plaintiff's motion for discovery sanctions, (Dckt. #197), defendant's response, (Dckt. #225), and plaintiff's reply, (Dckt. #229). For the reasons set forth below, plaintiff's motion for sanctions is denied.

**I.   RELEVANT BACKGROUND**

**A.   The Parties and Claims**

Steinfeld is a commercial real estate broker who worked in JLL's Atlanta office from 2016 until her termination in December 2019. In connection with her employment, Steinfeld executed an employment agreement (the "Agreement"), pursuant to which Steinfeld agreed that her "primary duty for the Company is making sales or obtaining orders or contracts for commercial real estate services . . . ." (Dckt. #104 ¶¶6-8). During her time at JLL's Atlanta office, Steinfeld worked on a brokerage team under the leadership of David Tennery. (*Id.* ¶19; Dckt. #1 ¶27).

Beginning in 2016, Steinfeld learned that JLL required members of her brokerage team to "set aside 6% of their gross commissions into 'holdback' accounts to cover the Team's expenses" and "3% of their gross commissions into the 'holdback' accounts as a bonus pool for JLL administrators and analysts." (Dckt. #1 ¶¶34-35). According to Steinfeld, JLL prevented her "from viewing or accessing these accounts, including to review the purported expenses and bonuses the accounts were reportedly created to reimburse and pay." (*Id.* ¶38).

Steinfeld became increasingly concerned about the lack of transparency – and any resulting effects on her own tax filings – and began to devote substantial time to investigate the team's expenses and invoices. (*Id.* ¶39-41). Upon doing so, she began to notice discrepancies in JLL's deal and expense tracking system and ultimately grew suspicious that Tennery was spending lavishly on personal travel expenses and improperly using the holdback accounts to reimburse those expenses. (*Id.* ¶43). But when Steinfeld raised these concerns, among others, to Tennery and JLL employees, little action was taken other than what Steinfeld views as a "sham investigation." (*Id.* at 12).

Steinfeld alleges that JLL unlawfully terminated her employment in December 2019 as retaliation for her continued reporting of "what she reasonably believed were JLL's tax violations and defrauding of its shareholders and investors," (*Id.* ¶1), and that JLL's stated reason for termination based on her performance is pretextual. Steinfeld asserts claims for, *inter alia*, retaliation in violation of Sarbanes-Oxley, breach of contract, unpaid wages, and unjust enrichment.

For its part, JLL maintains that the working relationship between Steinfeld and Tennery deteriorated in early 2019 after JLL announced its plans to acquire another real estate company, HFF, Inc. (Dckt. #104 ¶¶23-24). According to JLL, the deterioration of the partnership, and

2

JLL's ultimate acquisition of HFF negatively impacted Steinfeld's ability to bring in new business and revenue. (*Id*. ¶¶26, 41). Simply put, JLL alleges that it adequately investigated all of Steinfeld's concerns regarding Tennery, (*Id*. ¶¶27-38), and terminated her employment because she failed to meet her requirements to generate business and revenue in violation of the Agreement, failed to properly integrate with her new HFF colleagues, and was regularly absent from the office. (*Id*. ¶¶40-44). In JLL's affirmative defense no. 2, JLL maintains that these reasons amount to legitimate, non-retaliatory reasons for Steinfeld's termination. (Dckt. #31 at 16-17). JLL also brings counterclaims for, defamation, breach of contract, and breach of fiduciary duty.

**B.    Discovery**

Discovery in this matter commenced under the supervision of Magistrate Judge Gilbert in January 2021. (Dckt. #30). Over the course of 2021, Steinfeld propounded over 150 requests for production ("RFPs"), including – relevant to this motion – specific requests for documents and communications related to Steinfeld's alleged diminishing performance, and her integration with her HFF colleagues, (*see* RFP Nos. 19-20, 28, 106, 117, & 120). In response to each of those requests, JLL asserted various objections (including to the temporal scope) but elaborated further that "where JLL agrees to perform a search of documents, [it] will search records, files, and sources most likely to contain or possess responsive documents given the facts currently known to JLL." (Dckt. #197-1 at 21-22). There is no indication that Steinfeld either objected to JLL's intentions at that time or – inexplicably – that she ever met and conferred with JLL regarding search terms and the scope of JLL's intended search. Ultimately, JLL produced over 3,500 documents consisting of over 15,000 pages, including documents related to Steinfeld's

3

performance, her purported lack of business leading up to her termination, and her integration with HFF employees. (*See* Dckt. #225 at 3-4 (describing such documents)).

Just two weeks before fact discovery was set to close on January 31, 2022, Steinfeld requested, for the first time, a copy of the search terms JLL utilized to identify the responsive documents it previously produced. Although fact discovery closed on January 31, 2022 (save a few disputes and depositions), (Dckt. #72 & #80), JLL's counsel first provided Steinfeld's counsel with the search parameters it used to locate responsive documents in this matter in an e-mail dated February 10, 2022. (Dckt. #225-7). According to JLL, Steinfeld's counsel never responded to this e-mail or raised it with the Court at that time.

Steinfeld's counsel represents another plaintiff that brought a separate lawsuit against JLL in this District. *See Nicoletti v. Jones Lang LaSalle Americas, Inc.*, Case No. 21-cv-1454 (N.D.Ill.). On March 22, 2022, Steinfeld's counsel received a production of 80 documents (in particular, e-mails and attachments referenced hereinafter as the "*Nicoletti* Production") from JLL in the *Nicoletti* case. Steinfeld asserts that the *Nicoletti* Production included responsive e-mails and attachments regarding her performance and the structure of the office following JLL's acquisition of HFF. Despite this, on May 12, 2022, Steinfeld did not address the *Nicoletti* Production or raise any concerns regarding JLL's search terms when it sought to reopen fact discovery on May 12, 2022 based solely on the "new" allegations in JLL's recently filed amended counterclaims. Steinfeld's attempt to reopen discovery was ultimately unsuccessful, (Dckt. #128), and the parties proceeded with expert discovery.

It was only on September 19, 2023 – a year and a half *after* receiving the *Nicoletti* Production – that plaintiff's counsel first raised his concerns with defense counsel that JLL improperly withheld documents (namely those contained in the *Nicoletti* Production) that were

4

responsive to plaintiff's discovery requests. (Dckt. #225-9). Specifically, Steinfeld pointed to a document in that production in which Steinfeld was described as "a really strong executor" that "knows the market," (Dckt. #211 at 3 (hereinafter, the "Performance Document")).

Thereafter, the parties' meet and confer efforts were unsuccessful and, almost three more months later, in December 2022, Steinfeld filed the instant motion for sanctions pursuant to Rule 37 and the Court's inherent power for JLL's purported failure to disclose documents responsive to her discovery requests. Again, relying primarily on JLL's failure to produce the Performance Document, Steinfeld asks the Court to "enter default judgment against JLL" on JLL's second affirmative defense regarding its non-retaliatory reasons for Steinfeld's termination.

## II. ANALYSIS

### A. Standard for Discovery Sanctions

Federal Rule of Civil Procedure 37 "governs sanctions for discovery violations and establishes a sequence of action for addressing discovery violations." *Driver v. Chatys*, No. 15 C 4041, 2018 WL 11197102, at *3 (N.D.Ill. Aug. 8, 2018). First, pursuant to Rule 37(a)(3)(B), "if a party fails to produce documents requested in discovery, the requesting party may move for a court order compelling production." *Id*. If the party then fails to comply with such a court order, the Court may "may issue further just orders" including "rendering a default judgment against the disobedient party." *Id., quoting* Fed.R.Civ.P. 37(b)(2)(A)(vi). Moreover, if a party fails to properly supplement a prior discovery response, as required by Rule 26(e), the Court may impose appropriate sanctions, up to and including default judgment. Fed.R.Civ.P. 37(c)(1); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

In addition, the district court has "broad, inherent power to impose sanctions for failure to produce discovery, over and above the provisions of the Federal Rules." *Traffix USA, Inc. v.*

5

*Bay*, No. 21-CV-02093, 2022 WL 2046282, at *7 (N.D.Ill. June 7, 2022) (citing *SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012)); *see also Ramirez*, 845 F.3d at 776 (noting that pursuant to "the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it," a court "may impose appropriate sanctions to penalize and discourage misconduct."). However, "a district court must show restraint in exercising its inherent sanctioning power and may do so only if it finds that a litigant 'willfully abused the judicial process or otherwise conducted the litigation in bad faith.'" *Mohammed v. Anderson*, 833 Fed.Appx. 651, 654 (7th Cir. 2020), *quoting Ramirez*, 845 F.3d at 776.

For the following reasons, the Court in its discretion finds that Steinfeld has failed to show that discovery sanctions are appropriate here whether under Rule 37 or the Court's inherent power.[1]

### B. Steinfeld's Motion for Sanctions is Untimely

Although Rule 37 "does not establish any time limits within which a motion for sanctions must be filed . . . unreasonable delay may render such a motion untimely." *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994); *Premier Prod., Inc. v. Orion Cap. LLC*, No. 21 CV 1094, 2023 WL 11809987, at *4 (N.D.Ill. Dec. 22, 2023), *quoting MGA Entm't, Inc. v. Nat'l Prods.*, No. CV 10-07083-JAK SSX, 2012 WL 4052023, at *4 (C.D.Cal. Sept. 14, 2012) ("'[i]t is generally agreed that a motion for sanctions, regardless of the source of authority for the

---

[1] In her motion, Steinfeld sought sanctions under Rule 37(e) and the Court's inherent power. However, as JLL properly noted, Rule 37(e) governs sanctions where a party "failed to take reasonable steps to preserve electronically stored information if that information should have been preserved during the litigation, but it has been lost and cannot be restored or replaced through additional discovery." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.*, No. 12 CV 1851, 2016 WL 4765689, at *1 (N.D.Ill. Sept. 13, 2016) (citing Fed.R.Civ.P. 37(e)). Steinfeld has not alleged any such spoliation of electronically stored information here. Although Steinfeld clarified in her reply that she is seeking sanctions under the Court's inherent power, the Court also proceeds under Rule 37 to the extent that Steinfeld implies that JLL failed to properly respond to and/or supplement its discovery responses.

6

imposition of sanctions, must be timely filed.'"). Whether a motion for sanctions is timely depends on factors such as when the movant learned of the discovery violation, how long she waited before bringing it to the court's attention, and whether discovery has been completed. *Premier Prod.*, 2023 WL 11809987, at *4; *Walrus Brands, LLC v. Peaches Uniforms, Inc.*, No. 12 C 4892, 2018 WL 11453554, at *3 (N.D.Ill. July 9, 2018) (considering the time frame between plaintiff's discovery of alleged false interrogatory responses and the resulting motion for sanctions). What constitutes an "unreasonable delay" depends on the facts of each case. *Brandt*, 30 F.3d at 756; *Premier Prod.*, 2023 WL 11809987, at *4.

Here, Steinfeld's continued inaction and delay in seeking *any* sort of relief for JLL's purportedly deficient search and resulting document production until long after discovery had closed plainly weighs against awarding sanctions. That inaction and delay includes: (1) failing to respond to JLL's initial objections to her discovery requests or to request further information regarding the scope of JLL's search for responsive documents at any time in 2021; (2) waiting until two weeks before the discovery deadline to ask JLL what search terms were used, and then – upon receipt of those search terms – taking *no* action; (3) waiting over a year and a half after her counsel received the *Nicoletti* Production to raise the issue with defense counsel despite her claim that the Performance Document is critical to her case; and (4) waiting another three months after that before filing the motion for sanctions with the Court.

As JLL argues – and the Court agrees – Steinfeld had multiple opportunities over the course of this case to bring any deficiencies in JLL's production to the Court's attention and her "unreasonable delay" in doing so provides a sound ground to deny her motion. *See Brandt*, 30 F.3d at 757 (affirming the district court's decision denying a motion for sanctions as untimely where plaintiff "could, and should, have taken action years earlier."); *Premier Prod.*, 2023 WL

7

11809987, at *5-6 (denying motion for sanctions as untimely where, among other things, party waited four months after learning of violation regarding evidence it claimed was "highly probative and helpful" to its case to raise the issue with the court);² *Walrus Brands*, 2018 WL 11453554, at *3 (denying motion for sanctions where, among other reasons, plaintiff "sat on its rights" for two and a half years before filing the motion); *MGA Entm't*, 2012 WL 4052023, at *5 (finding motion for sanctions untimely where it was filed six months after notice of discovery violation and after close of discovery); *Heller Fin. Leasing, Inc. v. Gordon*, No. 03 C 6326, 2006 WL 1650339, at *5 (N.D.Ill. June 13, 2006) (motion to compel brought one year after close of discovery and on eve of trial was untimely).³ Consequently, the Court in its discretion denies Steinfeld's motion for sanctions based on its untimeliness.

### C. Steinfeld's Motion for Sanctions Otherwise Lacks Merit

Steinfeld's motion fails on substantive grounds as well. Again, relying primarily on *one* document in the *Nicoletti* Production, i.e., the Performance Document describing Steinfeld as "a really strong executor" that "knows the market," (Dckt. #211 at 3), Steinfeld contends that she is entitled to sanctions because: (1) JLL improperly withheld the Performance Document, among others, which were plainly relevant and responsive to her discovery requests (namely, RFP Nos. 19, 20, 28, 106, 117, 120); (2) the Performance Document "undisputedly undermines" the

---

² Steinfeld asserts in her reply that her counsel had no duty to review the *Nicoletti* Production to find documents responsive to *her* case. (Dckt. #229 at 2). This is true. However, her counsel did, in fact, "discover[]" the Performance Document when they reviewed the *Nicoletti* Production, (Dckt. #197 at 1), albeit "over a year" after discovery closed, (*Id.* at 7). (*Id.*). Yet, Steinfeld provides no explanation as to why her counsel appeared to then wait a few months to raise the issue with defense counsel and an additional *three months* to file this motion with the Court. Given plaintiff's belief as to the importance of the Performance Document, her months-long delay in bringing this motion after she brought the issue to defense counsel's attention was unreasonable. *See, e.g., Premier Prod.*, 2023 WL 11809987, at *5-6.

³ Any request for sanctions under Rule 37(b)(2) fails for the additional procedural reason that Steinfeld did not first seek a court order to compel JLL's production of additional documents, with which JLL did not comply. *See Driver*, 2018 WL 11197102, at *3 ("Rule 37 explicitly allows for sanctions only where the opposing party has failed to comply with a court order to compel that production.").

8

pretextual reasons for her termination related to her alleged poor performance, (Dckt. #197 at 7); and (3) JLL's failure to previously disclose the *Nicoletti* documents caused her prejudice by preventing her from conducting discovery related to those documents. On the instant record, however, each of these points falls short for the following reasons.

First, as JLL argues in its response (and Steinfeld does not persuasively dispute), the majority of the documents in the *Nicoletti* Production – including the Performance Document itself – are *not* responsive to RFP Nos. 19, 20, 28, 106, 117, 120, based on the requests, by definition, seeking the production of documents: "following the acquisition of HFF;" "between JLL employees," or related to Steinfeld's *poor* performance. In particular, the Performance Document *pre-dated* the acquisition; it was *not* a communication between JLL employees; and did *not* relate to Steinfeld's diminishing performance. Thus, while the Production Document has some relevance to Steinfeld's claims, Steinfeld's contention that JLL improperly withheld *responsive* documents is questionable at best. Moreover, according to JLL, "not a single document from the *Nicoletti* Production fell within JLL's search parameters in this case." (Dckt. #225 at 5). While perhaps unfortunate, such a result is not unexpected. *See City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 493 (N.D.Ill. 2018) ("With key word searching (as with any retrieval process), without doubt, relevant documents will be produced, and without doubt, some relevant documents will be missed and not produced. That is a known known."). And, again, any objection by Steinfeld to those search parameters now – *years* after they were first provided to her – comes way too late.

Second, the Court simply cannot agree that the Performance Document – referring to Steinfeld as "a really strong executor" that "knows the market" – "undisputedly undermines" JLL's proffered reasons for her termination related to her inability to generate business and

revenue in violation of the Agreement. As JLL points out, "it has never disputed that Steinfeld was capable of executing a deal," but JLL has maintained that it terminated her employment because she was unable to generate business. (Dckt. #225 at 13).

Finally, it is utterly unclear that Steinfeld has suffered any prejudice as a result of not having the *Nicoletti* Production – and particularly the Performance Document – during the discovery period in this case. This is so because the distinction between Steinfeld's ability to execute a deal and her ability to generate business was expressly discussed during certain fact depositions in this case, (*see* Dckt #225 at 13-14), and JLL has not taken issue with Steinfeld's execution abilities. (*Id.*, at 14). Furthermore, Steinfeld has failed to otherwise articulate how the *Nicoletti* Production contains any new or contrary information, the absence of which caused her prejudice.

Simply put, Steinfeld has failed to demonstrate that JLL committed any discovery violations that would support sanctions under Rule 37. Similarly, Steinfeld has failed to identify facts showing that JLL "willfully abused the judicial process or otherwise conducted the litigation in bad faith," *Mohammed*, 833 Fed.Appx. at 654, as would be necessary to support the entry of the sanction of default judgment under the Court's inherent authority. *See Sun v. Board of Trustees of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007) ("While dismissal and default judgment are within the Court's discretion, they are the most severe sanctions in the Court's arsenal and should be used only in extreme situations, or when other less drastic sanctions have proven unavailing."). Accordingly, the Court in its discretion denies Steinfeld's motion for sanctions.

10

## CONCLUSION

For the foregoing reasons, plaintiff's motion for sanctions, (Dckt. #197), is denied.

**DATE: August 12, 2024**

                                                **Jeffrey I. Cummings**
                                                **United States District Court Judge**