IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAREINE UDELL STEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 CV 5838 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| JONES LANG LASALLE AMERICAS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lareine Steinfeld ("Steinfeld") brings this action against her former employer defendant Jones Lang Lasalle Americas, Inc. ("JLL"), alleging *inter alia*, whistleblower retaliation in violation of the Sarbanes-Oxley Act. Currently before the Court are defendant's motion for evidentiary sanctions, (Dckt. #166), plaintiff's response, (Dckt. #174), defendant's reply, (Dckt. #180), and plaintiff's sur-reply, (Dckt. #196). For the reasons set forth below, defendant's motion for sanctions, (Dckt. #166), is granted in part and denied in part.

I.      RELEVANT BACKGROUND

     A.      The Parties and Claims

Steinfeld is a commercial real estate broker who worked in JLL's Atlanta office from 2016 until her termination in December 2019. In connection with her employment, Steinfeld executed an employment agreement (the "Agreement"), pursuant to which Steinfeld agreed that her "primary duty for the Company is making sales or obtaining orders or contracts for commercial real estate services . . ." (Dckt. #104 ¶¶6-8). During her time at JLL's Atlanta office, Steinfeld worked on a brokerage team under the leadership of David Tennery. (*Id.* ¶19; Dckt. #1 ¶27).

Beginning in 2016, Steinfeld learned that JLL required members of her brokerage team to "set aside 6% of their gross commissions into 'holdback' accounts to cover the Team's expenses" and "3% of their gross commissions into the 'holdback' accounts as a bonus pool for JLL administrators and analysts." (Dckt. #1 ¶¶34-35). According to Steinfeld, JLL prevented her "from viewing or accessing these accounts, including to review the purported expenses and bonuses the accounts were reportedly created to reimburse and pay." (*Id.* ¶38).

Steinfeld became increasingly concerned about the lack of transparency – and any resulting effects on her own tax filings – and began to devote substantial time to investigate the team's expenses and invoices. (*Id.* ¶39-41). Upon doing so, she began to notice discrepancies in JLL's deal and expense tracking system and ultimately grew suspicious that Tennery was spending lavishly on personal travel expenses and improperly using the holdback accounts to reimburse those expenses. (*Id.* ¶43). But when Steinfeld raised these concerns, among others, to Tennery and JLL employees, little action was taken other than what Steinfeld views as a "sham investigation." (*Id.* at 12).

Steinfeld alleges that JLL unlawfully terminated her employment in December 2019 as retaliation for her continued reporting of "what she reasonably believed were JLL's tax violations and defrauding of its shareholders and investors," (*Id.* ¶1), and that JLL's stated reason for termination based on her performance is pretextual. Steinfeld asserts claims for, *inter alia*, retaliation in violation of Sarbanes-Oxley, breach of contract, unpaid wages, and unjust enrichment.

For its part, JLL maintains that the working relationship between Steinfeld and Tennery deteriorated in early 2019 after JLL announced its plans to acquire another real estate company, HFF, Inc. (Dckt. #104 ¶¶23-24). According to JLL, the deterioration of the partnership, and

JLL's ultimate acquisition of HFF negatively impacted Steinfeld's ability to bring in new business and revenue. (*Id*. ¶¶26, 41). Simply put, JLL alleges that it adequately investigated all of Steinfeld's concerns regarding Tennery, (*Id*. ¶¶27-38), and terminated her employment because she failed to meet her requirements to generate business and revenue in violation of the Agreement, failed to properly integrate with her new HFF colleagues, and was regularly absent from the office. (*Id*. ¶¶40-44). JLL also brings counterclaims for, defamation, breach of fiduciary duty, and – relevant to the instant motion – breach of contract for, among other things, failing to return JLL's company property upon her termination in violation of the Agreement. (*Id*. ¶¶91-103).

  **B. Discovery**

Discovery in this matter commenced under the supervision of Magistrate Judge Gilbert in January 2021. (Dckt. #30).[1] The parties proceeded with written fact discovery and Judge Gilbert set an initial fact discovery deadline of September 30, 2021. (Dckt. #39). As of July 2021, Steinfeld had produced almost 8,000 pages of documents responsive to JLL's written discovery requests (issued in March 2021) and was in the process of reviewing 4,000 more pages, which she intended to produce on a rolling basis. (Dckt. #54). At a status hearing on August 11, 2021, Judge Gilbert directed Steinfeld to complete her production of documents and serve a privilege log by August 27, 2021, and extended the fact discovery deadline to November 30, 2021. (Dckt. #60).

---

[1] The parties present very different descriptions of the protracted discovery process in this matter, with each side taking some creative liberties in those descriptions. The Court, however, has pieced together this background with a careful review of the docket, the parties' contemporaneous filings, hearing transcripts, and the Court's prior orders. Additionally, in their briefs, the parties exerted a considerable amount of effort rehashing old discovery disputes and facts that are not relevant to resolving the instant motion.

3

In a joint status report dated September 2, 2021, Steinfeld reported that she "completed her document production on August 26, 2021," but had not yet produced a privilege log because "no documents were withheld based on privilege alone." (Dckt. #61 at 1). "In light of Steinfeld's discovery responses asserting attorney-client and work product privilege and other indications that certain documents have been withheld from production," JLL asked the Court order Steinfeld to produce a privilege log immediately. (*Id*. at 1-2). In response, Judge Gilbert ordered as follows:

> The Court is not inclined to order Plaintiff to produce a privilege log for documents she is withholding from production on grounds other than privilege (e.g., for example, relevance) at least based upon the brief description of the parties' dispute in their Status Report. If Defendant believes there is a legal basis for the Court to compel Plaintiff to produce a privilege log under these circumstances, it may file an appropriate motion after the parties have complied with Local Rule [37.2].

(Dckt. #62).

By September 30, 2021, the parties had met and conferred and Steinfeld "confirmed [she] would produce the privilege log by September 29, 2021," which she ultimately did. (Dckt. #64; Dckt. #79 at 104-09). That privilege log included entries reflecting services rendered by Steinfeld's prior counsel at a firm called Buckley Beal. (Dckt. #79 at 104-09). The parties took plaintiff's first deposition on October 1 and (due to "timing conflicts") on October 12, 2021, (Dckt. #66 at 1, n.1). The parties then proceeded with scheduling and completing a significant number of depositions under Judge Gilbert's supervision, and the fact discovery deadline was subsequently extended to January 31, 2022. (Dckt. #73).

Also in late 2021 – as outlined in detail in defendant's first motion to compel, (Dckt. ##78, 79) – the parties engaged in continued meet and confer efforts regarding Steinfeld's privilege log and her responses to defendant's March 2021 written discovery requests. Those efforts ultimately culminated in Steinfeld's production of amended discovery responses on

4

January 7, 2022. After JLL reviewed those responses, the parties continued to meet and confer, and Steinfeld produced additional amended responses on February 3, 2021, along with an amended privilege log. (Dckt. #79 at 335-341). In defendant's view, however, Steinfeld's responses and privilege log remained deficient, and defendant filed its first motion to compel on February 8, 2022. (Dckt. ##78, 79). In it, defendant sought an order compelling Steinfeld to, *inter alia,* produce communications and agreements between herself and her former counsel at Buckley Beal (or, alternatively, to produce an amended privilege log), and to appear for a continued deposition to testify as to all supplemental discovery produced after her October 2021 deposition.

The parties briefed defendant's first motion to compel and also proceeded with expert discovery in accordance with the schedule set by Judge Gilbert. In March 2022, Steinfeld produced the expert reports of William Funk and William Pearson, which – according to defendant – failed to comply with Rule 26(a)(2) because, among other reasons, the reports failed to adequately identify the documents relied upon by the experts. Defendant then filed its second motion to compel in April 2022, (Dckt. ##96, 97), seeking an order directing Steinfeld to produce and properly identify all documents relied upon by her experts.

After both of defendant's motions to compel were fully briefed, Judge Gilbert held a comprehensive motion hearing on those motions on September 23, 2022, (Dckt. #141), and ordered, in relevant part, as follows:

> Defendant Jones Lang LaSalle's Motion to Compel [78] is granted in part. Defendant's Motion [78] is granted to the extent that: (1) Plaintiff is required to produce by 10/7/22 a more fulsome amended privilege log consistent with the Court's ruling today; (2) Plaintiff shall appear for a continued deposition for up to four consecutive hours of testimony about her amended interrogatory answers, documents produced after her earlier deposition, and the amended privilege log, and Plaintiff is required to pay the court reporter's fee for that continued deposition as a sanction under Federal Rule of Civil Procedure 37(a)(5)(A) over Plaintiff's

objection; (3) Plaintiff shall produce to Defendant the Buckley Beal engagement letter(s) by 10/7/22 to the extent the letter or letters have not already been produced; and (4) Plaintiff shall produce the Buckley Beal invoices on a date in the future that the parties will agree upon. If the parties cannot agree on a date, then they can bring the issue back to the Court. For the reasons discussed on the record, the Court does not find at this time that Plaintiff waived the attorney-client privilege as to the documents listed on her privilege log or any Buckley Beal documents not yet listed on that log by reason of Plaintiff's failure to timely produce a privilege log that comports with the Federal Rules of Civil Procedure or based on reliance on the advice of counsel to support the reasonableness of her claims. The Court notes that at this time Plaintiff disclaims any intention to rely on the advice of counsel to support the reasonableness of her claims. Because the Court has granted Defendant's Motion [78] in large part and pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), having given Plaintiff notice and an opportunity to be heard on the issue of sanctions, the Court awards Defendant the attorneys' fees and expenses it incurred in preparing and filing its Motion to Compel . . . The attorneys' fees and expenses are awarded as a sanction jointly against Plaintiff and her counsel and over their objection. . . .(Dckt. #127).[2]

. . .

Defendant's Motion to Compel Expert Disclosures and Extend Expert Deadlines [96] is granted for the reasons stated on the record. Plaintiff shall produce by 10/7/22 expert opinions that comply with Federal Rule 26(a)(2)(b), including clear and unambiguous disclosure of the facts or data considered by the expert in forming his opinions, and clear references to any exhibits that will be used to support or summarize those opinions with Bates Stamps and/or other identifying references so that it is clear to Defendant which documents the experts considered in forming the opinions disclosed in their reports. (Dckt. #128).[3]

Pursuant to Judge Gilbert's orders, the parties took plaintiff's continued deposition on November 29, 2022, and expert discovery was finally completed on May 22, 2023, (Dckt. #161).

### C. Defendant's Motion for Sanctions

On June 14, 2023, defendant filed the motion for sanctions now before the Court, (Dckt. #166). In it, defendant contends that notwithstanding Judge Gilbert's orders, Steinfeld's

---

[2] Ultimately, Judge Gilbert awarded defendant $30,870.80 in attorneys' fees and $359.70 in costs. (Dckt. #176).

[3] Steinfeld filed objections to Judge Gilbert's orders before Judge Pacold pursuant to Federal Rule of Civil Procedure 72. Judge Pacold overruled those objections on May 25, 2023. (Dckt. #162).

discovery violations and misconduct continued and warrant sanctions in its favor. Specifically, and as discussed in more detail below, defendant maintains that Steinfeld's testimony at her court-ordered November 2022 deposition revealed that Steinfeld previously failed to produce – and in fact may have even spoliated – responsive and relevant documents reflecting her efforts to mitigate damages and the claims in this case. As a result of Steinfeld's "pattern of dilatory and evasive discovery tactics," (Dckt. #166 at 3), defendant now seeks an order: (1) limiting Steinfeld's mitigation evidence to the job search efforts identified in her October 2021 depositions; and (2) entering default judgment in defendant's favor on its counterclaim for breach of contract for failure to return company property.

For her part, Steinfeld disputes defendant's recitation of her conduct during discovery and vehemently denies that she has improperly withheld or destroyed any evidence relevant to this case.

## II.   ANALYSIS

### A.   Standard for Discovery Sanctions

Pursuant to Federal Rule of Civil Procedure 37, if a party fails to obey an order to provide discovery, to properly supplement a prior discovery response (as required by Rule 26(e)), or to properly preserve electronically-stored information, the court may issue further "just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; and "rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(b)(2); 37(c)(1); and 37(e); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). The district court has "wide latitude in fashioning appropriate sanctions" for discovery violations. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011), *quoting Johnson v. Kakvand,* 192 F.3d 656, 661 (7th

7

Cir. 1999). In doing so, the court will "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight*, 658 F.3d at 643; *see also Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) (noting that "the sanction selected must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.).

In addition, the district court has "broad, inherent power to impose sanctions for failure to produce discovery, over and above the provisions of the Federal Rules." [4] *Traffix USA, Inc. v. Bay*, No. 21-CV-02093, 2022 WL 2046282, at *7 (N.D.Ill. June 7, 2022) (citing *SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012)); *see also Ramirez*, 845 F.3d at 776 (noting that pursuant to "the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it," a court "may impose appropriate sanctions to penalize and discourage misconduct."). However, "a district court must show restraint in exercising its inherent sanctioning power and may do so only if it finds that a litigant 'willfully abused the judicial process or otherwise conducted the litigation in bad faith.'" *Mohammed v. Anderson*, 833 Fed.Appx. 651, 654 (7th Cir. 2020), *quoting Ramirez*, 845 F.3d at 776.

Finally, "[s]poliation of evidence occurs when one party destroys evidence relevant to an issue in the case," *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002), or fails "to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *TLS*

---

[4] This inherent authority does not, however, extend to entering sanctions for a party's spoliation of electronically stored information because "Rule 37(e) was amended in 2015 to 'foreclose[ ] reliance on inherent authority or state law to determine when certain measures would be used.'" *Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at *8 (N.D.Ill. Jan. 20, 2021), *report and recommendation adopted*, No. 1:16-CV-03371, 2021 WL 1418403 (N.D.Ill. Mar. 18, 2021), *quoting* Fed. R. Civ. P. 37(e), 2015 Amendment Advisory Committee Notes. "Consequently, Rule 37(e) provides the sole authority for potential sanctions concerning the failure to preserve ESI . . .". *Sonrai*, 2021 WL 1418405, at *8.

*Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, Civ. No. 15-2121, 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017) (internal quotation marks omitted).

Federal Rule of Civil Procedure 37(e) provides the Court authority to sanction a party for the failure to preserve electronically stored evidence ("ESI"). Rule 37(e) "sets out five prerequisites that must be met before any sanctions may be imposed." *Worldpay, US, Inc. v. Haydon*, No. 17 CV4179, 2018 WL 5977926, at *3-4 (N.D.Ill. Nov. 14, 2018). In particular:

(1) the information at issue must be electronically stored information;

(2) there must be anticipated or actual litigation;

(3) it must be the case that because of the actual or anticipated litigation, the information should have been preserved;

(4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and

(5) the lost ESI must be unable to be restored or replaced through additional discovery.

*Id*.; *Snider*, 2017 WL 2973464 at *4.

When the five prerequisites under Rule 37(e) are met, "the court looks to the prejudice suffered by the party seeking the ESI." *Snider*, 2017 WL 2973464 at *5. If the court finds that another party was prejudiced from the loss of the ESI, the court may order measures no greater than necessary to cure the prejudice. *Id*.; *Williams v. Am. Coll. of Educ., Inc.*, No. 16 CV 11746, 2019 WL 4412801, at *10 (N.D.Ill. Sept. 16, 2019). The choice of an appropriate remedy for spoliation of evidence in violation of Rule 37(e) is committed to the discretion of the trial court and is decided on a case-by-case basis. *Franklin v. Howard Brown Health Center*, No. 17 CV 8376, 2018 WL 4784668, at *5 (N.D.Ill. Oct. 4, 2018), *report and recommendation adopted*, 17 CV 8376, 2018 WL 5831995 (N.D.Ill. Nov. 7, 2018).

9

With these standards in mind, the Court turns to defendant's requests for evidentiary sanctions based on Steinfeld's purported discovery misconduct.

**B.    Steinfeld is barred from relying on any documentary evidence regarding her duty to mitigate that she did not previously produce to defendant.**

"Under Illinois law, mitigation of damages is an affirmative defense on which the defendant bears the burden of proof." *FirstMerit Bank, Nat'l Ass'n v. Emerald Properties, L.L.C.*, No. 13 C 5961, 2014 WL 1292865, at *5 (N.D.Ill. Mar. 28, 2014), *quoting Ner Tamid Congregation of N. Town v. Krivoruchko,* 638 F.Supp.2d 913, 919 (N.D.Ill. 2009). The duty to mitigate damages "forbids the victim of a breach of contract, which might well be involuntary, to allow his damages to balloon (when [s]he could easily prevent that from happening), as [s]he might be tempted to do in order to force a lucrative settlement." *Moran Foods, Inc. v. Mid–Atlantic Market Development Co., LLC*, 476 F.3d 436, 440 (7th Cir. 2007). "To sustain the defense the defendant must demonstrate that the plaintiff failed to exercise reasonable diligence and ordinary care in attempting to minimize the damages after injury has been inflicted." *Ner Tamid*, 638 F.Supp.2d at 913 (internal quotation and citation omitted).

Here, defendant asserted a failure to mitigate affirmative defense at the outset of this case, (Dckt. #12 at 55), and properly issued discovery requests seeking documents and information plainly relevant to that defense. *See Yorktown Indus., Inc. v. Aster Graphics, Inc.*, No. 19 CV 2413, 2023 WL 6541317, at *5 (N.D.Ill. Oct. 5, 2023) ("having pled the affirmative defense of failure to mitigate, [defendant] is entitled to discovery regarding that defense, for which it bears the burden of proof."); *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 510-12 (D.Nev. 2020) (allowing discovery relevant to the affirmative defense of failure to mitigate where that defense remained "live"). Although the extent of Steinfeld's production of

10

responsive mitigation documents to date remains unclear, the record reflects that – at a minimum (and with continued prodding) – Steinfeld produced *some* documents reflecting her mitigation efforts during fact discovery or shortly thereafter. (*See* Dckt. #79 at 7 (noting that on November 1, 2021, Steinfeld produced 12 documents, including "information concerning unemployment benefits, and a few e-mails regarding Steinfeld's efforts to seek employment with only one company during the two years after her termination."); and 15-16 ("Steinfeld also produced, for the first time on February 3, 2022 . . . a copy of her resume, which is integral to her mitigation efforts"). Moreover, when questioned about her job search efforts at her October 2021 deposition, Steinfeld testified that she had interviewed with two commercial real estate companies (NuMark and Colliers), but neither company extended her an offer. (Dckt. #166-10 at 4-5).

     Defendant now contends that at Steinfeld's court-ordered November 2022 deposition, she testified that she had since "applied for a lot of different real estate jobs," ("maybe a dozen, or 20"), but could not provide a name of even one of the real estate companies to which she applied (apart from previously idented Collier). (Dckt. #166-5 at 40-44). And, although Steinfeld testified that she would "usually" get a confirmation e-mail from any company she applied to, she admitted that she had not "gathered" any such confirmation e-mails to provide to her attorney." (*Id*. at 43). Steinfeld further testified that she "cleans out [her] emails from time to time," and had not disabled any automatic deletion filters for "junk" mail, but that she has "not cleaned out emails that are relevant to this litigation." (*Id*. at 46). To date, it is undisputed that Steinfeld has not produced any supplemental documents reflecting the numerous job applications she testified to (albeit it vaguely) at her November 2022 deposition. As a result, defendant asks the Court to "limit Steinfeld's mitigation evidence to the efforts identified in her October 2021

11

depositions." (Dckt. #166 at 11). Although the Court finds that a different limiting sanction is appropriate, defendant's particular request is denied for the following reasons.

First, it is of no moment (as defendant seems to imply) that Steinfeld's October 2021 testimony regarding her job search efforts differs from that of her testimony in November 2022. With a year in between, an increase in Steinfeld's alleged job applications is to be expected.

Second, defendant's allegation that Steinfeld engaged in spoliation warranting sanctions under Rule 37(e) by *deleting* her job search confirmation e-mails is speculative. In support of this contention, defendant relies primarily on Steinfeld's testimony that she "cleans out [her] emails from time to time," and left on her auto-deletion filters for "junk" mail, all the while ignoring her testimony that she had *not* deleted e-mails relevant to this case. Indeed, defendant fails to mention the five prerequisites necessary to establish spoliation of her mitigation documents under Rule 37(e), and its speculation alone is insufficient to support the particular limiting sanction it seeks. *See Flair Airlines, Ltd. v. Gregor, LLC*, No. 18-CV-2023, 2018 WL 8445779, at *3 (N.D.Ill. Dec. 14, 2018), *report and recommendation adopted sub nom. Flair Airlines, Inc. v. Gregor LLC*, No. 18 C 2023, 2019 WL 1465736 (N.D.Ill. Apr. 3, 2019) (finding that "defendants' version of events that led to the destruction is based upon mere speculation, which is not enough to warrant sanctions."); *Owens v. Patek*, No. 18-CV-624-JDP, 2019 WL 3253180, at *2 (W.D.Wis. July 19, 2019) (holding that "spoliation sanctions would be inappropriate because [plaintiff] has offered no evidence, other than his own speculation, that these additional injury photos were taken, let alone destroyed."); *Carter v. Allison McGowan*, No. 16-CV-838-JPS, 2017 WL 530517, at *2 (E.D.Wis. Feb. 9, 2017) ("Plaintiff's fear of possible spoliation is grounded in pure speculation, not in fact.").

Lastly – and most importantly – Steinfeld maintains that she has "produced all of the mitigation documentary evidence that she has in her possession," has no "supplemental documents to produce," and even concedes that she "will not be able to present documentary evidence that has not been produced in the case." (Dckt. #174 at 10, 12). As such, although the Court will not limit Steinfeld's mitigation evidence solely to her efforts described in her October 2021 depositions, the Court *will* bar Steinfeld from relying on any documents evidencing her mitigation efforts that have not already been produced to defendant, pursuant to Rule 37(c)(1). *See Mack v. City of Chicago*, No. 16 C 7807, 2019 WL 1331786, at *2 (N.D.Ill. Mar. 25, 2019), *aff'd*, 788 Fed.Appx. 396 (7th Cir. 2019) ("Under Rule 37(c)(1), exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless."); *Maas v. City of Billings*, No. CV 19-79-BLG-BMM-KLD, 2021 WL 2352427, at *3 (D.Mont. June 9, 2021) ("Because Maas did not produce these materials during discovery and there is no indication that her failure to do so was substantially justified, she cannot rely on them to defeat summary judgment.").[5] Of course, if this case proceeds to trial, Steinfeld will be free to testify about her mitigation efforts (which defendant can impeach as appropriate) and the weight to be afforded such testimony, if any, will be left to the finder of fact at trial.

---

[5] Although plaintiff seems to imply that she could *still* supplement her production of mitigation documents under Rule 26(e), (*see* Dckt. #174 at 12), such a supplement would come too little too late where any potential shortcoming in that production was identified almost two years ago at her November 2022 deposition, if not before. *See* Fed.R.Civ.P. 26(e)(1)(A) (supplements must be made "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect") (emphasis added).

### C. Steinfeld and her expert are barred from relying on the Steinfeld Notes in support of her claims against defendant.

Next, defendant asks the Court to enter default judgment on its breach of contract claim against Steinfeld for failing to return company property, based upon her failure to properly produce and/or her spoliation of at least a portion of a document defendant has penned the "Steinfeld Notes." (Dckt. #166-5 at 48-53). Although the exact origin and purpose of the Steinfeld Notes remains unclear, it is undisputed that the Notes were first produced to defendant with Steinfeld's expert disclosures of William Pearson, (and not during fact discovery); were created by Steinfeld; and include her "summaries of [her] claims and allegations in this action." (Dckt. #174 at 15). The Steinfeld Notes themselves also refer directly to other documents and attachments, namely "screenshots" from defendant's internal accounting system "Dealio" and "correspondence" from a former JLL employee, (Dckt, #166-5 at 48-49), but it is undisputed that those accompanying documents were *not* produced to defendant with Pearson's expert disclosures.

When asked about the Steinfeld Notes at her November 2022 deposition, Steinfeld could not remember when or exactly why she created the Notes, but she explained that she "probably" created them around the time her expert was "being engaged" to provide "an explanation to [Pearson] what was going on." (Dckt. #166-5 at 33-35). Although Steinfeld agreed there was "stuff [] missing" from the Notes, she claimed that she would not have removed or "censored" her own document. (*Id*. at 35).

Following the deposition, the parties met and conferred regarding the missing attachments, after which Steinfeld confirmed – through counsel – that the "version of the document that was provided to Mr. Pearson (which JLL has) has no attachments or hidden images" and that a different (put another way, *complete*) version of the document "does not

14

exist." (Dckt. #66-7 at 2). Based on this admission, and Steinfeld's pattern of discovery conduct to date, defendant seeks default judgment in its favor on its claim that Steinfeld failed to return company property after her termination as required by her employment agreement. According to defendant, because the only version of the Steinfeld Notes that has been produced "has been redacted to remove information that Steinfeld was required to return following her termination" – that is, JLL's internal accounting records – the spoliation of the full version of the document warrants the entry of default judgment. (Dckt. #180). Again, although the Court finds that a different limiting sanction is appropriate, the Court denies defendant's request for default judgment.

To begin, in contrast to the mitigation documents, the record supports a finding that Steinfeld failed to properly preserve the entirety of the Steinfeld Notes in violation of Rule 37(e). To be sure, based on the language of the Notes themselves and Steinfeld's own testimony, there can be no dispute that the *full* version of the Steinfeld Notes is (1) ESI; (2) prepared by Steinfeld during or in anticipation of this litigation; (3) which should have been preserved; (4) but was lost due to Steinfeld's failure to take reasonable steps to preserve it; (5) and which cannot be restored because – by her counsel's own admission – the full version does not exist. In this regard, the five prerequisites for spoliation of ESI have been met, *see* Fed.R.Civ.P. 37(e); *Worldpay,* 2018 WL 5977926, at *3-4.[6]

Moreover, the Court finds that the loss of the full version of the Steinfeld Notes has caused prejudice to defendant. "Rule 37(e) eliminates the requirement of a culpable state of

---

[6] Steinfeld's implication that the Steinfeld Notes (whether in full or in part) "appear to plainly be privileged and work-product-protected documents," (Dckt. #174 at 16), is entirely misplaced where: (1) neither Steinfeld nor her counsel could speak to the nature of the document; (2) the full version apparently no longer exists; and (3) Steinfeld has never sought to claw back the partial version of the document after its disclosure.

15

mind" as a *prerequisite* for obtaining sanctions and "the [R]ule now focuses on the prejudice to the moving party." *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *11 (E.D.Tenn. Nov. 14, 2017) (emphasis added). Prejudice for purpose of the Rule is determined by the impact that the lost ESI has on a "party's ability to obtain the proofs necessary for its case." *Id.* Thus, "'[t]o suffer substantive prejudice due to spoliation of evidence, the lost evidence must prevent the aggrieved party from using evidence essential to its underlying claim.'" *Does 1-5 v. City of Chicago*, No. 18 CV 03054, 2019 WL 2994532, at *7 (N.D.Ill. July 9, 2019), *quoting Schmalz v. Vill. of N. Riverside*, No. 13 CV 8013, 2018 WL 1704109, at *3 (N.D.Ill. Mar 23, 2018). Since it is often impossible to know the exact nature of the lost and unrecoverable ESI, the moving party "must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence *might have been.*" *Rodriguez-Toledo*, 2017 WL 1155743, at *1 (internal quotation marks omitted; emphasis in original); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019) (finding that party established prejudice by plausibly suggesting that deleted e-mails might contain important information to support its claims); *Worldpay*, 2018 WL 5977926, at *5; *Snider*, 2017 WL 2973464, at *5.

Here, the partial version of the Steinfeld Notes plainly shows that the missing portions – particularly references to screenshots of defendant's internal documents that it contends Steinfeld was legally required to return – could have proven important to defendant's claim for breach of contract. *See Sonrai*, 2021 WL 1418405, at *13 ("Any deleted ESI from this critical time frame certainly might have been important to support [plaintiff's claim]."). As such, prejudice to defendant is apparent, and the Court turns to the appropriate sanction to cure that prejudice. Fed.R.Civ.P. 37(e).

Again, "[t]he choice of an appropriate remedy for spoliation is confined to the sound

discretion of the trial judge and is assessed on a case-by-case basis." *Franklin v. Howard Brown Health Center*, No. 17 CV 8376, 2018 WL 4784668, at *5 (N.D.Ill. Oct. 4, 2018), *report and recommendation adopted*, 17 CV 8376, 2018 WL 5831995 (N.D.Ill. Nov. 7, 2018), *quoting Watkins v. New York City Transit Authority*, 16 Civ. 4161 (LGS), 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018); *see also Boneck v. City of New Berlin*, 22 Fed.Appx. 629, 630 (7th Cir. 2001) ("penalties in litigation should be proportional to the wrongs").

The entry of a default judgment, however, is warranted where "the most critical evidence" supporting a claim or defense is destroyed and the non-responsible party has suffered "irreparable prejudice." *GN Netcom*, 930 F.3d at 83 (citing cases); *Sonrai*, 2021 WL 1418405, at *15 (citing cases). On the other hand, a lesser sanction is appropriate where the destroyed ESI may have helped the non-responsible party prove a piece of its case, but the ESI was "certainly not the 'sole piece of evidence.'" *GN Netcom*, 930 F.3d at 84; *Sonrai*, 2021 WL 1418405, at *16 (denying request for a default judgment where plaintiff was prejudiced – but not irreparably so – by the spoilation because it still had considerable evidence to prove its claim); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 201 (D.S.C. 2008) (spoliation did not support the "extreme sanction of default judgment" where plaintiff still had "considerable evidence" to prove its claim); *Top Tobacco, L.P. v. Midwestern Cash & Carry, LLC*, No. 11 CV 4460, 2012 WL 4490473, at *3 (N.D.Ill. Aug. 3, 2012), *report and recommendation adopted*, 2012 WL 4490412 (N.D.Ill. Sept. 27, 2012) (sanction less than dismissal was warranted where spoliation, "while extremely serious" did not render plaintiffs unable to prove their claims); *Am. Family Mut. Ins., Co. v. Roth*, No. 05 C 3839, 2009 WL 982788, at *14 (N.D.Ill. Feb. 20, 2009) ("Roth's conduct has not made it impossible for American Family to prove its case, and the Roth's perfidy can be dealt with through means other than a default judgment").

Here, although defendant was prejudiced by Steinfeld's spoliation of the full version of the Steinfeld Notes, it has *not* argued that such evidence is the *only* evidence to support its claim for breach of contract, and the record is further lacking the requisite showing of intent to support the extreme sanction of default judgment. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 980 (N.D.Ill. 2021) ("Intent must be established before a court can impose sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2)."). Nor does the Court find, as defendant implies, that Steinfeld's overall conduct during discovery – although far from perfect – warrants default judgment on this claim.

However, because it is evident that Steinfeld failed to properly preserve the *full* version of the Steinfeld Notes, (and further failed to produce even the *partial* version during fact discovery), the Court, within its discretion, will preclude Steinfeld or her expert from relying on the Steinfeld Notes to affirmatively prove her claims (or to support her damages) against defendant. Fed.R.Civ.P. 37(c)(1). Defendant, on the other hand, may affirmatively rely on the partial version of the Steinfeld Notes – and the nature of the missing portions thereof – in support of *its* claim that Steinfeld failed to return company property. (If defendant relies on the Steinfeld Notes in support of its claim, Steinfeld may likewise reference the document to defend herself.) In the Court's view, this sanction is "no greater than necessary to cure the prejudice resulting from the loss of the ESI." *CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 625 (N.D. Ill. 2022) (citing Fed.R.Civ.P. 37(e)).

## CONCLUSION

For the foregoing reasons, defendant's motion for sanctions, (Dckt. #166), is granted in part and denied in part as set forth above.[7]

**DATE: September 17, 2024**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**

---

[7] The Court notes that although defendant made a request for attorney's fees and costs associated with this motion, it did not do so until it made a passing reference to such relief in its reply. (Dckt. #180 at 20). By not requesting an award of fees and costs in its initial motion, the Court, in its discretion, finds that defendant has waived its right to this relief. *See, e.g., Herron v. Progressive Car Finance, LLC*, No. CIV-22-638-SLP, 2023 WL 11762874, at *3 (W.D.Okla. Oct. 13, 2023) ("Plaintiff did not request such relief in her initial Motion and therefore waived the issue."); *Brown v. Life University, Inc.*, No. 1:23-cv-02487-MLB-LTW, 2023 WL 11915712, at *1-2 (N.D.Ga. Dec. 1, 2023) (denying request for attorney's fees that was first asserted in a party's reply brief).